**LOWELL O. WEST LUMBER SALES,**
a corporation, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**No. 36214.**

United States District Court
N. D. California, S. D.

March 31, 1958.

———◆———

Walter R. James, McAllister & Johnson, Sacramento, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Marvin D. Morgenstein, Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, Judge.

This action was originally brought by plaintiff, Lowell O. West Lumber Sales, against defendant, United States of America, to quiet title to certain real property in Tehama County, California. Through amended and supplemental pleadings the court is required to (1) interpret the provisions of Contract No. AF 33(038)–15531, as amended, (2) determine the liability of plaintiff on a promissory note, and (3) determine whether or not defendant is entitled to certain stipulated amounts for price revision.

The record shows that Lowell O. West and defendant, acting through its representative, Jennings B. Straley, signed a document titled Fixed Price Contract For Services, Department of the Air Force, No. AF 33(038)–15531. Clause 1 of this agreement, in pertinent part, provides:

"(a) The Contractor [plaintiff] shall furnish and supply to the Government lumber storage services and special lumber millwork services in connection with Government-owned lumber delivered by the Government to the Contractor's plant located at Richfield, Tehama County, California, * * *.

"(b) The Contractor shall furnish said services when and as the Government may make Calls for hereunder during the period set forth in Clause 3 hereof.

"(c) Calls by the Government hereunder will be made by the Contracting Officer, Headquarters Air Materiel Command, by written notification to the Contractor. Each such Call shall set forth the services to be furnished, the time of performance and the estimated cost. Immediately upon receipt of each such Call, the Contractor, subject to the provisions of paragraph (e) of this Clause 1 and paragraph (c) of Clause 2 shall proceed to furnish the required services."

Plaintiff contends that this basic agreement, signed by the parties, is a contract which obligated the defendant to have all of its requirements for lumber storage and special millwork services in the western area of the United States furnished by plaintiff. Or, to put it another way, that the basic agreement is a "requirements" type contract.

It is the contention of defendant that the basic agreement is not a binding contract, that a binding contract was never intended, that a contract came into existence only upon the issuance of a Call pursuant to provisions of the basic agreement, and that the contract was for the services and the duration specified in the Call.

The record shows that West, who signed the basic agreement for plaintiff, sat in the courtroom throughout the trial but failed to take the stand to testify as to his understanding of the basic agreement at the time it was signed. However, the testimony of Straley, who signed for the defendant, is enlightening on this point. He testified as follows:

"Q. Did you at any time state to Mr. West that the Government was obligated to make calls upon him? A. No, sir.

"Q. Did you at any time state to Mr. West that the Government was

in any way committing itself to make calls upon him? A. No, sir.

\* \* \* \* \* \*

"Q. Did you state to Mr. West that the only obligation on the Government was that if it wanted to make calls, it could? A. I don't know whether I specifically made that statement. I did explain to him the operation of a call contract and that the step which makes it an effective contract is when the call is issued, but there is no commitment to issue a call." Transcript pp. 170–171.

"Q. Mr. Straley, when you entered into these negotiations with Lowell O. West Lumber Sales, was it your intention to obligate the Government to purchase all its requirements of services from the Lowell O. West Lumber Sales? A. It was not my intention to obligate the Government to purchase any of their requirements. It was my duty and intention to make an agreement by which they could obtain these services to the extent that it was determined they desired to cover the requirements that they had.

"Q. And that was determined pursuant to each call; is that correct? A. Right. And that determination was made by the Supply Division, not by the Contracting Division." Transcript pp. 176–177.

Plaintiff's contention that the basic agreement is a "requirements" type contract is based upon the decision of the Armed Services Board of Contract Appeals in Appeal of Lowell O. West Lumber Sales, ASBCA 2560. The ASBCA, acting for the Secretaries of the Army, Navy, and Air Force, hears appeals by contractors from findings of fact determined pursuant to a disputes clause such as Clause 12 of the basic agreement.[1] 32 C.F.R. § 30.1, Part 1,

1. "12. Disputes.—Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from date of receipt of such copy, the Contractor may appeal

paragraph 4 (1954). A decision of the Board is final only as to questions of fact arising under the contract. See United States v. Wunderlich, 1951, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113. Since characterization of the basic agreement itself is a question of law, the Board's holding that this is a "requirements" type contract is not binding upon the court. See United States v. Lundstrom, 9 Cir., 1943, 139 F.2d 792.

█ The interpretation of the original transaction is clear. Defendant was under no obligation to plaintiff but might make Calls for services during the period from October 6, 1950 through December 31, 1952 which plaintiff would then perform. Because defendant was not obliged to take its requirements from plaintiff, the basic agreement lacks the necessary mutuality of obligation to be a valid contract. Streich v. General Motors Corp., 1955, 5 Ill.App.2d 485, 126 N.E.2d 389; accord, Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 8 Cir., 1902, 114 F. 77, 57 L.R.A. 696. Consequently, a contract came into existence only upon defendant's issuing a Call under the basic agreement, and the contract was for the services and duration specified in the Call. Accord, Fowler's Bootery v. Selby Shoe Co., 1938, 273 Ky. 670, 117 S.W.2d 931.

In 1951 and 1952, plaintiff and defendant executed three supplements to Contract No. AF 33(038)–15531. Supplemental Agreement No. 1 established a procedure for renegotiating the prices of the services after they had been performed. Supplemental Agreement No. 2 increased by $2,500,000 the total amount authorized to cover Calls which defendant might make for plaintiff's services. Because it obligated Government funds in excess of the amount which a contracting officer could obligate solely by his own action, this Supplement was reviewed and approved by the Department of the Air Force. Supplemental Agreement No. 3, entered into in December 1952, extended the period of performance of the basic agreement from December 31, 1952 through December 31, 1955 and set forth the manner in which plaintiff was to refund $396,559, an amount determined under price renegotiation as the excessive compensation which plaintiff had received between October 6, 1950 and June 30, 1952. The record shows that this Supplement required no further approval by the Department of the Air Force because it did not obligate new funds but rather dealt with the repayment of funds.

The second issue before the court is to determine plaintiff's liability on a promissory note for the $396,559 which plaintiff owed as a result of price renegotiation. The precise question is whether plaintiff's promise to pay was final and unconditional or whether payment of that sum was conditioned upon plaintiff's receiving further Calls out of which payment was to be made. The promissory note is secured by a mortgage of real property and a deed of trust of certain other real property: plaintiff seeks quiet title to the mortgaged property, while defendant seeks judgment on the note and foreclosure of the mortgage.

Plaintiff alleges that the promissory note, mortgage, and deed of trust were executed pursuant to Supplemental Agreement No. 3. It is plaintiff's contention that this Supplement never became effective because (1) defendant changed provisions in the Supplement and did not communicate the changes to plaintiff for its acceptance and (2) defendant had decided not to issue any

---

by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall be final and conclusive; *provided* that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opporunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

further Calls under the basic agreement by the time the supplement would normally have become effective. In any event, plaintiff contends, the promissory note is now unenforceable because the promise to repay was conditioned upon the issuance of future Calls.

The evidence shows that plaintiff and Straley, acting for defendant, executed Supplemental Agreement No. 3 in December 1952 and that it required no further approval by the Department of the Air Force to be effective at that time. Plaintiff contends that the copy which plaintiff received in April 1953 was different from the Supplement executed in December 1952; therefore, the Supplement could not have been effective when executed.

Plaintiff points to a difference in the wording of Section Second, paragraph (c) (1), which refers to the manner of repaying the $396,559. When the parties began negotiation in December 1952, the paragraph read:

"Repayment to be made at the rate of Seventy-Two Thousand Dollars and No Cents ($72,000.00) per annum by means of deductions from invoices submitted by the Contractor. Such deductions to be made at the rate of Six Thousand Dollars and No Cents ($6,000.00) per month. Said monthly payment includes an amount applicable to depreciation."

This paragraph was scratched out; a notation to "make flexible" was made in the margin next to it. Plaintiff and Straley then agreed to a revised draft of the paragraph which was attached to the Supplement when it was executed in December 1952. The revised paragraph read:

"Repayment to be made at the rate of $72,000.00 per annum by means of deducting $36,000.00 from invoices submitted for December and June of each calendar year, provided, that if such invoices are less than $36,000.00 the difference shall be paid by certified check. This rate of repayment, or method

thereof, shall be subject to change at the end of any December or June by mutual consent of the Contracting Officer and the Contractor."

The copy of the Supplement received by plaintiff in April 1953 contains the following wording of the paragraph in question:

"Repayment to be made at the rate of Seventy-Two Thousand Dollars and No Cents ($72,000.00) per annum by means of deducting Thirty-Six Thousand Dollars and No Cents ($36,000.00) from invoices submitted for December and June of each calendar year, provided, that if invoices for December and June are less than $36,000.00 the difference shall be paid by certified check made payable to the Treasurer of the United States. This rate and method of payment is subject to change at the end of any price revision period as may be mutually agreed upon by the Contractor and the Contracting Officer. Said payments include an amount applicable to depreciation."

Plaintiff contends that the addition of the last sentence in the April 1953 copy ("Said payments include an amount applicable to depreciation") constitutes a counter-offer which prevented the Supplement from being effective when executed. The court finds no merit in this contention. The record shows that the words, "make flexible," were directed at adjusting the rate of payment according to plaintiff's ability to pay and that the sentence relating to depreciation never was in issue. When plaintiff wrote to defendant inquiring about other provisions in the Supplement after plaintiff had received a copy of it, plaintiff made no objection to the changes in Section Second. Consequently, the court finds that Supplemental Agreement No. 3 was effective in December 1952.

■ Since it is plaintiff's contention that the promissory note was executed pursuant to Supplemental Agreement No. 3, plaintiff also attacks the effectiveness of that Supplement on the basis that

it lacked consideration, defendant having decided not to issue further Calls for plaintiff's services. The record shows that execution of the promissory note for the amount stated in Supplemental Agreement No. 3 was actually performance of plaintiff's promise in Supplemental Agreement No. 1 to renegotiate prices for the entire period covered by the basic agreement. Since defendant was not obligated to make any Calls under the basic agreement, defendant's increasing its second Call $300,000 supplied the consideration for plaintiff's promise in Supplemental Agreement No. 1 to renegotiate prices. The mortgage and deed of trust are supported by the same consideration which supports the promissory note. It is therefore immaterial whether or not defendant had decided not to issue further Calls when Supplemental Agreement No. 3 became effective.

Plaintiff's final contention is that the promissory note was conditioned upon the issuance of future Calls and is now unenforceable because that condition was never fulfilled. The evidence shows that plaintiff, in its own records, treated the note as an absolute, unconditional obligation to repay defendant for excess compensation which plaintiff already had received. Therefore, the court must reject plaintiff's contention that the promissory note, secured by the mortgage and deed of trust, is unenforceable because of the failure of the condition to occur.

The record shows that defendant is entitled to price revisions for the period from October 6, 1950 through June 30, 1952 in the amount set forth in the promissory note, $396,559. Since plaintiff was obligated to renegotiate prices for the entire period during which it performed services for defendant, defendant is entitled to refunds for the period from July 1, 1952 through June 30, 1953. The record shows that the amount due for the period from July 1, 1952 through December 31, 1952 is $39,445 and for the period from January 1, 1953 through June 30, 1953 is $29,940.

Plaintiff's counterclaim for termination damages, arising because of the notice of termination sent by defendant in April 1953, is based upon the assumption that the basic agreement is a "requirements" type contract which Supplemental Agreement No. 3 extended through December 31, 1955. The court having determined that the basic agreement is not a "requirements" type contract, it follows that the notice of termination sent in April 1953 was merely a courtesy telling plaintiff that further Calls would not be made after the expiration of the existing Call on June 30, 1953. Therefore, plaintiff's counterclaim for termination damages for ceasing to utilize plaintiff's services after June 30, 1953 must be denied.

It is the opinion of the court that no issues remain to be tried between the parties. Judgment for defendant is granted as prayed, with costs, defendant to prepare findings of fact and conclusions of law in accordance with this opinion.

And it is so ordered.