**LOWELL O. WEST LUMBER SALES,**
a corporation, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16115.

United States Court of Appeals
Ninth Circuit.

Aug. 14, 1959.

McAllister & Johnson, Sacramento, Cal., for appellant.

George Cochran Doub, Asst. Atty. Gen., Alan S. Rosenthal, David N. Webster, Attys., Dept. of Justice, Washington, D. C., Lynn J. Gillard, U. S. Atty., San Francisco, Cal., for appellee.

Before POPE, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

This is an appeal from a judgment of the United States District Court[1] entered in favor of the United States Government (hereinafter government), and dismissing the complaint of Lowell O. West Lumber Sales, a California corporation (hereinafter appellant) on an action arising from the interpretation and performance of certain agreements between the parties.

As background to the controversy, the record shows that on October 6, 1950, appellant's assignor, Lowell O. West, and the United States Air Force executed a document designated "Fixed Price Contract for Services, Department of the Air Force," which was prepared by an employee of the government, and consists of 17 pages, of which two are partially typewritten, four fully typewritten, ten are standard form clause in fine print with some typewritten additions, and one is for signatures. The pertinent parts of the contract appear in Appendix I to this opinion.

Under this document the first call was issued on October 6, 1950, the date the document was signed. In simple letter form, it provided that "in accordance with the provisions of subject contract you [appellant] are requested to furnish services of lumber storage and special millwork, as required, for the period beginning with the date of this call and extending through 30 June 1950," the end of the then current fiscal year. On July 1, 1951 and July 1, 1952, identical calls were issued to cover the ensuing fiscal years.

Effective November 1, 1950 the Air Materiel Command, from its headquarters at the Wright Patterson Air Force Base, Dayton, Ohio, established a procedure by which requisitions for lumber needed by the Air Force within any of three zones into which the continental United States was divided for that purpose would be directed to the bulk lumber storage plant located in the particular zone from which the request was made. Appellant's facility, Richfield District Air Force Storage Plant, California, was designated as the place to which requisitions were to be directed from Air Force installations in the "Western Zone" of the United States.

Subsequently certain provisions of the basic document were modified by three "Supplemental Agreements". Supplement I, entered into on October 31, 1951 contained (1) the government's consent to the transfer and assignment by Lowell O. West of his rights and duties under the basic document to Lowell O. West Lumber Sales, a California corporation; (2) a new schedule of rates; and (3) a

---

1. Lowell O. West Lumber Sales v. United States, D.C.N.D.Cal.S.D.1958, 160 F.Supp. 429.

clause providing for a redetermination of the rates by negotiation between the parties for services already performed as well as for future services.

Supplement II, executed on November 12, 1951, increased the amount of money available for services under the contract from $1,500,000 to $4,000,000. With this and other indications of government needs, appellant increased its plant and facilities to meet demand, at a total cost of approximately $500,000.

Pursuant to the provisions of Supplement I providing for price revision, the government and appellant in October 1952 entered into negotiations which resulted in a determination that appellant's charges during the period October 6, 1950 to June 30, 1952 were excessive, and appellant agreed to repay the government the sum of $801,146.00. Since appellant had reduced its prices and made refunds in the amount of $404,587.00, this left a net refund due the government of $396,559.00.

A government witness who participated in the negotiations testified that once the repayment figures had been agreed upon the usual Air Force practice was to require the contractor to make immediate payment. However, in this case the witness testified appellant stated it did not have the cash available to make immediate payment and therefore arrangements were made, which were formalized in Supplement III, allowing appellant to give a note for the indebtedness secured by a mortgage on the corporate personal property and a deed of trust on the corporate real property used in providing the services under the basic document. In discharge of the indebtedness appellant agreed to pay $72,000 annually in two equal installments of $36,000 each. It is recited in Supplement III that it was entered into on November 19, 1952. However, the letter transmitting to appellant the fully executed supplement in final form is dated April 27, 1953.

Because of changes in Air Force policy as to the type of services provided by the appellant, the basic document was terminated by means of a formal termination notice which bore the same date as the Supplement III letter of transmittal, April 27, 1953. The government testimony was, however, that the two documents had been prepared by different persons, although both within the Air Materiel Command.

Subsequently the Air Force contracting officer rejected appellant's request for damages, and ruled that it was entitled to nothing by way of costs in connection with the termination. In accordance with the disputes clause of the basic document, appellant appealed to the Secretary of the Air Force. The appeal was heard by the Armed Services Board of Contract Appeals (hereinafter Board) which, in such matters, acts for the Secretary.[2] The board rejected the government's argument that the basic document created no obligation on the government, and found the instrument was intended by the parties to be a requirements contract covering the needs of the government for the term of the contract, subject only to the availability of funds. The decision was concurred in by 16 of the 17 members, the 17th being absent. The board ordered the case remanded to the contracting officer for the purpose of fixing damages. At this point the Assistant Secretary of the Air Force (Materiel) suspended further proceedings on the ground that the question of whether the basic document was a "call" or "requirements" type contract was then pending in the United States District Court for the Western District of Missouri in a similar case.

Meanwhile, on June 5, 1954, and before the Missouri case was decided, appellant filed its complaint in this action, seeking to quiet title to the real and personal property which it had mortgaged to the United States. The basis for relief was that the note had allegedly been issued by an officer of the corporation without the requisite authority and that the corporation had never ratified his action. In addition, it was alleged that the note

2. See Appendix II.

and mortgage had been procured by the fraud of an agent of the government. Appellant prayed that the mortgages be delivered up, cancelled and satisfied on the record.

The government denied the allegations of fraud, the lack of authority of the corporate officer, and in addition filed three counterclaims. The first and second counterclaims were grounded on the promissory note which was then in default. The government demanded judgment for the amount of the note, foreclosure of the mortgage, and sale of the properties. A third counterclaim was for judgment in the amount of $39,445.-00, plus interest, representing the amount of price revision for the period from July 1, 1952 through December 31, 1952, which was subsequent to the period which had been the subject of previous price revision negotiations and agreement. On December 8, 1955, 17 months after the answer and counterclaim had been filed, the board rendered its decision which we have discussed above. Upon stipulation appellant then filed a supplemental pleading and the government filed a fourth counterclaim. The government's fourth counterclaim asked judgment of $29,940.00, covering price revisions for the period January 1, 1953 to June 1, 1953, for which the board had ruled appellant was liable. Appellant's pleading alleged that by reason of the board's construction of the contract appellant was entitled to a credit as an offset against relief, if any, granted the government on its counterclaim. The government filed an answer to the supplemental pleading in which it asserted that (1) the district court lacked jurisdiction over the subject matter since the appellant's claimed credit exceeded the $10,000 limitation of the Tucker Act, 28 U.S.C. § 1346(a) (2); and (2) that the basic document was a "call" and not a "requirements" type contract, and accordingly no liability attached to its termination.

The trial court, on the issues which were finally presented to it for decision, found that (1) the parties had entered into a "call" type contract by which appellant agreed to supply certain lumber milling and storage services to the government, but which did not contain a corresponding obligation on the part of the government to make any requests for the services; (2) appellant was liable on the promissory note given to the government and the government was entitled to have the property described in the mortgage and deed of trust sold and the proceeds applied in payment of the indebtedness consisting of $360,559.00, the principal sum of the note, with interest of $92,233.88, attorney's fee of $1,000.00, and expenses of $100.00; and (3) appellant was liable for further excessive prices charged pursuant to the basic document and its supplements in the amount of $39,445.00 for the period July 1, 1952 to December 30, 1952, and for the amount of $29,940.00 for the period January 1, 1953 to June 30, 1953. From this judgment the present appeal has been taken.

We turn first to a consideration of the basic document. The government contends that it is not a contract, arguing that the document merely provides that if called upon by the government appellant would provide the services requested in the manner outlined in the basic document. This interpretation is based on the premise that the language of the document itself compels that conclusion. Such a premise is untenable. The key language of the document, relied on by the government that

> "the contractor shall furnish said services *when and as the government may make calls for* hereunder during the period set forth in clause 3"

does not exclude the interpretation sought by appellant, that the government was obligated to make the calls to appellant if it made any at all in the western area of the United States.

The proper inquiry, then, is whether the writing reflects the entire agreement of the parties. The answer depends wholly upon the intent of the parties to the agreement which must be

determined, first, from the expressions in the contract, and if not there expressed, then from the conduct and conversations of the parties and the surrounding circumstances. "In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation." 9 Wigmore on Evidence, § 2430, pages 98–99; see also Producers Livestock Loan Co. v. Idaho Livestock Auction, Inc., 9 Cir., 1956, 230 F.2d 892, 894–895; Simmons v. California Institute of Technology, 1949, 34 Cal.2d 264, 274, 209 P.2d 581. Cf. Anderson v. Owens, 9 Cir., 1953, 205 F.2d 940, 943, applying Washington law. Here the plain fact is that the question of whether the government is obligated to place calls with the appellant is simply not covered or dealt with in any way in the contract. The government prepared the contract; it could have easily eliminated any doubt as to its obligation to make a call,[3] if any, from appellant. It chose not to do so. Therefore, although the contract from its terms could be characterized as a "call" type contract, it could not from its terms be classified as one in which the parties had eliminated all reasonable doubt of its also being a "requirements" type contract. From the language used, it is not unreasonable that the parties intended that calls should be made when and as the government required the services for the western United States during the period of the contract. It is elementary that a contract, in which one party has agreed to supply and the other party has agreed to take all of its requirements, if it has any requirements, for a specified period, has the necessary mutuality of obligation to form a valid and enforceable contract. From this it follows that the interpretation of the transaction is not so clear as the district court indicated. True, characterization of the agreement is a question of law, but that characterization can rest only on the intent of the parties. Here the government's own contract fails to reveal the intent of the parties as to whether or not the government was obligated to make calls. Therefore, the intent can be determined only from the conduct and conversations of the parties and the surrounding circumstances. This is clearly a factual determination.

The board specifically found as a matter of fact that "all the circumstances surrounding the manner in which the contract was handled by the parties * * * evince an understanding by them that it—the contract—was in fact one covering the requirements of the Government and subject only to periodical notices as to availability of funds." Under the circumstances of this case, this finding of fact is sufficient to settle the matter and require a finding by the trial court that the basic document is a binding contract on both parties unless there is a compelling reason why it should not be binding. United States v. Wunderlich, 1951, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113.

The government urges, however, that there is a reason why the finding is not binding on the court. It argues that even if this is a finding of a factual question it is a type of factual question the solution of which does not require the professional knowledge and skill of a specialized board and is therefore not encompassed within the finality provisions of Article 12 of the basic document. Rather, the government maintains it is a question which can have significance only in relation to the inter-

---

3. See Streich v. General Motors Corporation, 1955, 5 Ill.App.2d 485, 126 N.E.2d 389, 391–392, cited by the district court, 160 F.Supp. at page 431, where the language specifically limited the obligation to pay only for materials or items contained in a call.

pretation of the contract and, therefore, if the court is to interpret the basic agreement it must retain the power to investigate the facts upon which the board based its legal conclusions.

The government points out that the Court of Claims in dealing with this problem has said that:

"The rule is well established by the decided cases that in contracts of this character where [in a disputes clause] it is provided that the decision of the contracting officer and the head of the department shall be final and conclusive only as to questions of fact, a decision or ruling on a protest or appeal which involves or is based upon an interpretation and construction of a contract and the specifications is a decision on a question of law rather than the determination of a fact and does not preclude the consideration, decision, and determination by the court of the question in controversy, including the facts." Callahan Construction Co. v. United States, 1940, 91 Ct.Cl. 538, 616.

In Rust Engineering Co. v. United States, 1938, 86 Ct.Cl. 461, 473–474, cited in the Callahan case as authority, a contractor did not appeal from an adverse decision of a board of officers of the Treasury Department as provided in the disputes clause of his contract. The government argued he had not exhausted his administrative remedy and the Court of Claims was without jurisdiction. The Court of Claims held it did have jurisdiction, pointing out that the disputes clause was final only as to questions of fact, and since the board made no findings of fact there was nothing from which an appeal was required to be tak-

en. The Court of Claims then interpreted the specifications of the contract based on its own findings of fact.

In the Callahan case the Court of Claims also made its own determination of the facts but this was where

"practically all the decisions and recommendations of the contracting officer and the head of the department in regard to practically all the claims in suit were based upon constructions which they placed upon certain articles of the contract and the specifications, rather than upon their findings upon disputed questions of fact." 91 Ct.Cl. at page 610.

As to factual questions which the contracting officer did resolve but which the Court of Claims did not follow, the court found the contracting officer's determinations were arbitrary and so grossly erroneous as to imply bad faith. 91 Ct.Cl. at pages 564, 593 and 651.

■ While it is true that in making its decisions as to questions of law the Court of Claims will consider the underlying facts and make a determination as to them, its cases, cited by the government, do not go so far as the government would have us to go here and, in effect, classify questions of fact into two distinct categories, those relating to questions of law which can be determined de novo by the courts, and those which are not related to questions of law which cannot be considered de novo. But whatever the policy of the Court of Claims might be on this subject, we cannot accept the goverment's argument. We believe the proper treatment of this problem can be reached by the application of Sections 321 and 322 of Title 41.[4] These sections do not authorize the fine distinc-

---

4. Section 321, Title 41 U.S.C.A. "Limitation on pleading contract—provisions relating to finality; standards of review.

"No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract,

shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substan-

tion sought by the government but, by the same token, they do not preclude a court charged with interpreting a contract from investigating the facts upon which the department or agency determinations were made. Section 321 when read with Section 322 clearly defines the legislative policy. When the department or agency head has made a decision as to a question of fact it shall be final unless the same is "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." From this it follows that the board's factual determination is binding on the court unless it can find that the determination is subject to at least one of these defects. Here the district court failed to make such a finding.

 The government, whose burden it was to show that the board's finding of fact was not binding upon the trial court, did present testimony before the trial court from which the court could have held that it was not the intention of the Air Force contracting officer to obligate the government to purchase any of their requirements from the appellant when he was negotiating the basic agreement. From this it could be inferred that there was some evidence to support the trial court's rejection of the board's findings as to the intention of the parties. But the test which must

be applied is not whether there was evidence to support the district court's determination, but rather it is whether there was a substantial showing in the district court that the board's determination was, in the language of Section 321, "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." The record of the proceedings before the board has not been brought before this Court. Therefore, the matter must be returned to the district court for its determination of whether there is some basis within the meaning of Section 321 of Title 41 to prevent from being binding on the district court the finding of fact by the board that the basic document was intended to be a requirements contract. This determination should be based on any further evidence the parties may wish to introduce on this issue.

 The government contends that even if it is subject to termination damages, the appellant in no event could "obtain a judgment in this proceeding in excess of the $10,000 jurisdictional limit imposed on the district courts by the Tucker Act, 28 U.S.C. § 1346(a) (2)."[5] This contention, however, ignores the provisions of 28 U.S.C. § 2406, which recognizes the right of an individual to claim a credit when sued for damages by the government.[6] While the sec-

tial evidence. May 11, 1954, c. 199, § 1, 68 Stat. 81."

Sec. 322, Title 41 U.S.C.A. "Contract—provisions making decisions final on questions of law.

"No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board. May 11, 1954, c. 199, § 2, 68 Stat. 81."

5. § 1346. United States as defendant.

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

＊　＊　＊　＊　＊

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive

department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

6. 28 U.S.C. § 2406. "Credits in actions by United States; prior disallowance.

"In an action by the United States against an individual, evidence supporting the defendant's claim for a credit shall not be admitted unless he first proves that such claim has been disallowed, in whole or in part, by the General Accounting Office, or that he has, at the time of the trial, obtained possession of vouchers not previously procurable and has been prevented from presenting such claim to the General Accounting Office by absence from the United States or unavoidable accident. June 25, 1948, c. 646, 62 Stat. 972."

tion does not authorize an affirmative judgment against the United States, it does allow a properly established credit against the government to the extent of the government's claim. United States v. Wilkins, 1821, 6 Wheat. 135, 146, 5 L.Ed. 225, 227–228; In re Greenstreet, Inc., 7 Cir., 1954, 209 F.2d 660, 664, 667; see also United States v. Shaw, 1940, 309 U.S. 495, 501, 60 S.Ct. 659, 84 L.Ed. 888; Bull v. United States, 1934, 295 U.S. 247, 261–263, 55 S.Ct. 695, 79 L.Ed. 1421. Cf. United States v. United States Fidelity & Guaranty Co., 1940, 309 U.S. 506, 511, 60 S.Ct. 653, 84 L.Ed. 894. This, in effect, is what the appellant seeks in its supplemental pleading. The trial court, in deciding the basic document as a matter of law was a "call" type agreement which did not obligate the government, did not reach the issues connected with the appellant's claim for credit and in accordance with the pretrial order no evidence was introduced on this subject. On remand, if the court determines that the board's finding as to the intention of the parties is binding, then, as we have pointed out, it must follow that the basic document was a binding contract on both parties for the termination of which appellant is entitled to a credit in the amount of its damages as a setoff against and up to the extent of the relief granted the government, provided, of course, the appellant's claim for credit is established.

In the light of our holding requiring further proceedings in the district court, we deem it unnecessary to consider the appellant's argument that it was denied a fair trial because of the court's rulings relative to the binding effect of the board's findings of fact.

We turn now to a consideration of the appellant's final contention, which requires a determination of appellant's liability on a promissory note for $396,559.-00 which plaintiff owed as a result of price renegotiation. Appellant's contention is that the Supplement III, which provided for the promissory note secured by a mortgage and deed of trust, is invalid because the cancellation of the basic agreement on which the supplement re-

lied was a failure of consideration for the appellant's promises contained in the Supplement III. Appellant argues that the only consideration for execution of Supplement III, which required appellant to execute the note, was the extension of the basic agreement to December 1955. The government, on the other hand, contends that the first supplement to the basic agreement, in which the appellant agreed that if a price redetermination resulted in decreases of prices it would repay any decrease to the government "as the contracting officer may direct", is controlling, and that the subsequent execution of the note and deed of trust by the appellant were merely in pursuance of this agreement. From this the government argues that the consideration for the issuance of the promissory note and the execution of the mortgage and deed of trust comes not from Supplement III, but from the underlying debt, which the appellant has admitted, and from the extension of time granted by the government in which to pay the debt.

■ From the record it is clear appellant owed the money, and it is equally clear that in Supplement I appellant agreed to pay any indebtedness resulting from price redetermination negotiations "in such manner as the [government] contracting officer may direct." This presents the question of whether the note is supported by consideration other than that contained in Supplement III. Appellant's promise to pay back any overpayment it had received contained in Supplement I is supported by the consideration of the government's recognition and consent to the transfer and assignment of rights under the basic contract from Lowell O. West, an individual, to Lowell O. West Lumber Sales, a corporation, and the government's promise to increase the contractor's payments if the revised prices exceeded the contract prices. In conformance with these provisions of Supplement I, the exact figure of the indebtedness was arrived at through negotiation and appellant conceded its obligation. The government

could have forced immediate payment. It refrained from doing so. Instead it took a note for the amount then due and granted an extension of time in which to pay the then liquidated amount. Appellant did not then and does not now dispute its liability for this amount. The acceptance by the government of the note secured by the mortgage and deed of trust given as payment for the underlying debt constitutes sufficient consideration for the note. Uniform Negotiable Instruments Law, § 25; West's Ann.Civ.Code California, § 3106, Cinema Schools v. Westchester Fire Insurance Co., D.C.Cal.S.D.1932, 1 F.Supp. 37, 39.

Appellant in its brief states that the determination of the question as to whether the repayment by the contractor was conditional was decided against the government in the proceedings before the board. Such an assertion is unfounded. The board did refer to the point but that was only to show, from the testimony of a government witness who testified that he assumed that appellant would continue in business and have an opportunity to liquidate the indebtedness, that the contract was intended to be for the government's requirements. The board certainly did not decide the question of whether the note was conditioned on continuance of the contract. Nothing else appears in the record indicating the trial court erred in finding there was no such condition. The subsequent cancellation of the basic document, therefore, had no effect on the note which, as we have discussed, was otherwise supported by adequate consideration.

The judgment of the district court dismissing appellant's supplemental pleading in which appellant seeks to establish a credit against the relief granted appellee on its counterclaim is reversed, and the cause is remanded to the district court for further hearing and proceedings on this issue, consistent with views expressed herein. In all other respects the judgment is affirmed.

### Appendix I

The pertinent provisions of the basic contract are as follows:

"Fixed Price Contract for Services, Department of the Air Force (United States Air Force)

"Contractor: Lowell O. West, an Individual Doing Business as Lowell O. West Lumber Sales.

"Contract for: Lumber Storage and Special Millwork Services (On Call).

"Fixed Price: Not to exceed $1,500,-000.00.

\* \* \* \* \* \*

"This Contract is for the general utilization by the service or services named herein. All calls on the Contractor or orders for performance of services or delivery of supplies hereunder issued either by this Contracting Service or for a Service other than the Contracting Service will contain the certificate of availability of funds, quoting the Allotment number to be used in making payments.

"Allotment: To be set forth in each Call issued hereunder.

\* \* \* \* \* \*

"1. *Services To Be Furnished:*

"(a) The Contractor shall furnish and supply to the Government lumber storage services and special lumber millwork services in connection with Government-owned lumber delivered by the Government to the Contractor's plant located at Richfield, Tehama County, California, approximately 125 miles north of Sacramento, California. Such services shall be furnished in accordance with Technical Order No. 22–1–2 dated 10 August 1944 and Technical Order No. 22–10–1 dated 18 March 1947.

"(b) The Contractor shall furnish said services when and as the Government may make Calls for hereunder during the period set forth in Clause 3 hereof.

"(c) Calls by the Government hereunder will be made by the Contracting Officer, Headquarters Air Materiel Command, by written notification to the Contractor. Each such Call shall set forth the services to be furnished, the time of performance and the estimated cost. Immediately upon receipt of each such Call, the Contractor, subject to the provisions of paragraph (e) of this Clause 1 and

paragraph (c) of Clause 2 shall proceed to furnish the required services.

\* \* \* \* \* \*

"2. *Consideration and Payment*

"(a) The Contractor shall be paid the following prices upon satisfactory performance of this contract and upon the submission of properly certified invoices or vouchers therefor as full payment for services furnished by the Contractor pursuant to Calls issued by the Government during the period commencing 6 October 1950 and ending 30 June 1951:

\* \* \* \* \* \*

"(b) The prices for services to be called for after 30 June 1951 shall be negotiated by and agreed upon by the parties hereto prior to the issuance of Calls by the Government for such services and shall be evidenced by an appropriate Supplemental Agreement to this Contract. Calls for services to be performed after 30 June 1951 are subject to availability of funds." \* \* \*

"3. *Period of Performance*

"The Contractor shall furnish services under this contract when and as the Government may make calls for hereunder during the period commencing 6 October 1950 and ending 31 December 1952."

\* \* \* \* \* \*

"12. *Disputes.*—Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall be final and conclusive; provided that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. In connection with any appeal proceeding under this clause, the Con-

tractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

"13. *Definitions.*—As used throughout this contract, the following terms shall have the meanings set forth below:

"(a) The term 'Secretary' means the Secretary, the Under Secretary, or any Assistant Secretary of the Department and the head or any assistant head of the executive agency; and the term 'his duly authorized representative' means any person or persons or board (other than the Contracting Officer) authorized to act for the Secretary.

\* \* \* \* \* \*

"19. *Termination for the Convenience of the Government.*—

"(a) The performance of work under this contract may be terminated by the Government in accordance with this clause in whole, or from time to time in part whenever the Contracting Officer shall determine that such termination is in the best interests of the Government. Termination of work hereunder shall be effected by delivery to the Contractor of a Notice of Termination specifying the extent to which performance of work under this contract is terminated, and the date upon which such termination becomes effective.

\* \* \* \* \* \*

"(f) The Contractor shall have the right of appeal, under the clause entitled 'Disputes', from any determination of the amount due to the Contractor made by the Contracting Officer under paragraphs (c) or (e) above, except that if the Contractor has failed to submit a claim within the time provided in paragraph (c) above and has failed to request extension of such time, the Contractor shall have no such right of appeal. In any case where the Contracting Officer has made a determination of the amount due under paragraph (c) or (e) above,

the Government shall pay to the Contractor the following: (i) if there is no right of appeal hereunder or if no timely appeal has been taken, the amount so determined by the Contracting Officer, or (ii) if an appeal has been taken, the amount finally determined on such appeal; and such determination being final and conclusive upon the Contractor and the Government.

\*　\*　\*　\*　\*　\*

"23. *Notice of Award*

"This is the definitive contract contemplated by Notice of Award addressed by the Government to the Contractor under date of 6 October 1950 and supersedes said Notice of Award."

Appendix II

The Armed Services Procurement Regulations and the joint directive of the Secretaries of the Army, Navy, and the Air Force of May 1, 1949, containing the Charter and the Rules for the Armed Services Board of Contract Appeals contain the following pertinent provisions:

"4. The Armed Services Board of Contract Appeals is hereby designated and shall act as the authorized representative of the respective Secretaries of the Army, Navy, and Air Force in hearing, considering and determining as fully and finally as might each of the Secretaries (a) appeals by contractors from decisions on disputed questions by contracting officers or their authorized representatives or by other authorities pursuant to the provision of Armed Services contracts requiring the decision of appeals by the head of a department of the Armed Services or his duly authorized representative or board \* \* \*. When an appeal is taken pursuant to a dispute clause in a contract which limits appeals to disputes concerning questions of fact, the Board may nevertheless in its discretion hear, consider, and decide all questions of law necessary for the complete adjudication of the issue \* \* \*.

"5. When a contract requires the Secretary of a Department of the Armed Services, personally, to render a decision on the matter in dispute, the Armed Services Board of Contract Appeals, in accordance with the procedure set forth in paragraph \* \* \*, shall make findings of fact and recommendation to the Secretary of the Department with respect thereto."