G. H. BABER et al., Appellants,

v.

John LAY et al., Appellees.

Court of Appeals of Kentucky.

Oct. 11, 1957.

Joe Hobson, Prestonsburg, Hobson & Scott, Pikeville, for appellants.

Burke & Burke, Pikeville, for appellees.

STEWART, Judge.

In this case the single issue raised is whether a certain contract was lacking in mutuality and, if so, whether the contract was terminable at the will of either of the parties.

The uncontradicted facts are that on March 29, 1949, appellants, partners d/b/a "Jacks Creek Mining Company", and appellees, partners d/b/a "Virgie Coal Company", entered into a written contract whereby, briefly stated, appellees promised "to sell and deliver all coal" to appellants which was mined from a particular mine in Pike County. The latter agreed to accept "all coal which their equipment will permit them to process at the best advantage * * * and which market conditions will permit them to handle." The price to be paid was $4.50 per ton, subject to revision by mutual consent. Appellants further agreed to attempt to find a market for the coal they were unable to handle in order that appellees might maintain a weekly operation of five days, with the understanding that appellees were free to sell their coal to others only if appellants were unsuccessful in their effort to find a buyer and could not accept the coal themselves. The agreement further gave appellants the right to reject any coal or cancel the agreement if in their opinion the coal was not clean and merchantable. The last provision of the contract provided two methods by which appellees could cancel upon the payment of a $5 consideration, but unless cancellation was made the agreement was to remain in force for a term of one year.

The parties hereto operated under the agreement until February 11, 1950, after which time appellees refused to deliver any more of their coal. Appellants brought this action to recover $3633.53, the amount of profits they alleged would have been made by them had the coal been delivered as promised under the contract. Subsequently appellants amended their complaint, requesting an accounting in order to establish the exact amount of the damages they claimed. The case was referred to a special commissioner who ruled in his report that the contract was unenforcible on the theory that it was unilateral and therefore lacked mutuality. Exceptions were duly entered to the report when filed, which were overruled, and the complaint was ordered dismissed.

The Jacks Creek Mining Company has appealed from this finding of lack of mutuality of obligation and makes the following argument: (1) The reservation of the right of cancellation is the only aspect of the contract which could make it unilateral; (2) the retention of the right to cancel did not make the contract unilateral because appellants reserved this right only if the coal was not clean or merchantable; and (3) even if the contract is void, the performance of its conditions by appellees has made it binding upon the parties.

The finding of the commissioner (and the circuit court) that the contract constituted nothing more than a continuing offer to sell which could be revoked at any time we believe to be correct. It is a well-settled rule that mutuality is an essential element of an executory contract, and where one party is not bound by the terms of a contract, neither party is bound. Venters v. Stewart, Ky., 261 S.W.2d 444; Consolidated Realty Co. v. Richmond Hotel & Bldg. Co., 253 Ky. 463, 69 S.W.2d 985.

An analysis of the language of the contract in the instant case leads to the inescapable conclusion that appellees could at their whim cease production without incurring any liability to appellants, because they failed to commit themselves to mine, in the first instance, or to continue to operate for the duration of the agreement. Furthermore, no penalty was provided for a failure to deliver the amount of coal which appellants could profitably handle. Therefore, we reiterate that appellees could terminate their mining operations at any time with impunity and it follows that appellants

could refuse to accept coal deliveries in their discretion.

The provisions of this contract are quite similar to an agreement found in the case of Springton Coal Co. v. Bowling, 228 Ky. 317, 14 S.W.2d 1082. In that case the defendant-appellant coal company had agreed to pay to the plaintiffs-appellees, Bowling and Daniels, a stipulated sum per ton "for each and every ton" of coal the plaintiffs should remove from two entries of the defendant's mine. As in the present case, there was no stipulation as to a definite quantity to be mined or to be purchased. This Court there held that the contract was a unilateral agreement which either party could abandon at any time without becoming responsible for damages. However, the Springton case dealt with a total output contract and we should mention that the ruling of this Court on the facts presented there has been criticised as being inconsistent with the weight of authority. See Corbin on Contracts, Volume 1, footnote to section 158 on page 524.

■ Be that as it may, a total output contract contemplates a buyer bound to purchase all that the seller produces, and in the instant case the contract does not involve such an obligation. In the Springton case the promise was to buy all coal mined. In the case under consideration, appellants promised to take all the coal they could profitably handle. Although a promise to buy total needs or requirements of a business from a producer is by the weight of authority a valid promise and constitutes sufficient consideration for a return promise, yet, where the determination of the amount needed or required is left entirely to the will of the purchaser, such an amount must be considered too indefinite to enable

enforcement of the contract. See Corbin on Contracts, Volume 1, section 156, page 509.

■ However, it should be pointed out that appellants have not bound themselves to buy only from appellees. They are at liberty under the agreement to purchase freely from other producers and to have similar contracts (an unlimited number, in fact) existing with other coal companies in addition to appellees'. In this respect what appellants may need or require is conditioned not only by the fluctuation of the coal market but also by their acquisition of coal from other companies. The determination of the amount to be purchased from appellees rests solely upon the amount secured from sources other than appellees, and the decision to buy from appellees is wholly governed by a subjective standard under the circumstances. Thus the amount of coal purchased from appellees could approach near the vanishing point. This being the case, appellants have bound themselves only to the extent that they desire to be bound and the promise made by them is at most an illusory promise to purchase and such is not a sufficient consideration for appellees' promise to sell all the coal mined by them to appellants.

Since this court has consistently held that mutuality of obligation is an essential element of an executory contract, the trial court correctly adjudged the contract void and the contention of appellants that the validity of the contract rests only upon the termination clause is without merit. Morgan v. Morgan, 309 Ky. 581, 218 S.W.2d 410; Combs v. Hazard Ice & Storage Co., 218 Ky. 29, 290 S.W. 1035. For the foregoing reasons the other grounds advanced by appellants are without merit.

Wherefore, the judgment is affirmed.