Argued December 5, 1977, affirmed February 14, 1978

WILSONVILLE CONCRETE PRODUCTS, *Appellant,*
*v.*
TODD BUILDING COMPANY, *Respondent.*
(No. A-7601-00953, SC 25126)

574 P2d 1112

Fred A. Anderson of Anderson, Dittman & Anderson, Tigard, argued the cause and filed briefs for appellant.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

BRYSON, J.

**BRYSON, J.**

Plaintiff brought this action for lost profits, alleging that defendant had breached a contract to buy concrete from plaintiff. The case was submitted to the trial court on the following stipulated facts:

"(1) The concrete which is the subject matter of this lawsuit was to be used in the construction of the Security Unit of Dammasch State Hospital, on which project defendant was prime contractor, and the State of Oregon was the Owner.

"(2) Defendant refused to accept delivery of pre-mix concrete additional to the 245 cu. yds. alleged in plaintiff's complaint because the State of Oregon terminated its contract with defendant as prime contractor for the construction of said Security Unit.

"(3) The State of Oregon terminated its contract with defendant to build the Dammasch Security Unit because the State failed to conform to zoning and land use requirements of Clackamas County, Oregon, and the County issued a 'Stop Work' order against the State.

"(4) Defendant's total requirements for redi-mix concrete, had the contract been completed, would have been approx 3,058 cubic yards.

"(5) The 3,948 cubic yards alleged in the Complaint were based upon information obtained by George Adams from a contractor or contractors bidding on the Dammasch Security Unit project or sources other than defendant contractor.

"(6) Defendant's purchase order attached to the Complaint was submitted by Defendant to Plaintiff on or about October 29, 1974, after the prime contract for the security unit was formalized with the State of Oregon.

"(7) But for the action by the State of Oregon in terminating Defendant's contract for the construction of the security unit, Plaintiff would, in the normal course of construction, pursuant to normal business custom and usage have delivered all the redi-mix concrete required by Defendant in the completion of the project, to-wit: 2,813 cubic yards additional to the 245 cubic yards previously delivered.

"(8) The $3.50 per cubic yard as alleged in the complaint represents the loss of profits by Plaintiff per unit for the 2,813 cubic yards not delivered."

[ 347 ]

In addition, the trial court had before it the following evidence:

"PURCHASE ORDER

TODD BUILDING COMPANY

Date: October 29, 1974

TO: WILSONVLLE CONCRETE PRODUCTS
P. O. BOX 37
WILSONVLLE, OREGON 97707

Ship To: TODD BUILDING CO.

At: PSYCHIATRIC SECURITY UNIT
DAMMASCH STATE HOSPITAL
WILSONVILLE, OREGON

When: AS REQUIRED

Via: YOUR TRUCKS

Terms: NET F.O.B. JOBSITE

| Item No. | Quantity | DESCRIPTION | Price | Amount |
|---|---|---|---|---|
| | | Furnish the following as per specifications: | | |
| 1. | | Concrete, 3,500 p.s.i. | $ 21.50/ | cu. yd. |
| 2. | | " " (After April, 1975) | 23.00 | " " |
| 3. | | " 3,500 p.s.i. Chem. comp. | 29.70 | " " |
| 4. | | " 2,000 p.s.i. | 20.00 | " " |
| 5. | | Pea Gravel, clean washed | 3.75 | " " |
| 6. | | Crushed Rock, 1 1/2" | 3.75 | " " |
| 7. | | River Run Rock, 2" | 3.00 | " " |

TODD BUILDING COMPANY

By: /s/ R. G. Phillips
 R. G. Phillips"

Both parties then moved for summary judgment pursuant to ORS 18.105, there being no disputed factual issues. The trial court granted defendant's motion, stating in a letter opinion:

> "The Purchase Order memorialized a 'Requirements Contract' (O.R.S. 72.3060). The Defendants [sic] 'good faith' requirements ended on termination of its contract with the State of Oregon."

and entered judgment for defendant. Plaintiff appeals.

Plaintiff's assignments of error contend:

> "A. The trial court erred as a matter of law in granting defendant's motion for summary judgment:
> "* * * * *.
> "(2) Failing to grant plaintiff's motion for summary judgment against defendant and in favor of plaintiff."

In their briefs, both parties agree "that a 'requirements' contract resulted from the negotiations of the parties * * *. The plaintiff was obligated to furnish all requirements at the agreed price and the defendant was obligated by the contract to accept all requirements for the project."

Plaintiff argues that although the contract was a requirements contract, "[t]he 'requirements' of the pre-mix contract between plaintiff as materialman and defendant as prime contractor, are properly measured by the total foreseeable quantities of pre-mix concrete as required by a completed project as contemplated by the parties at the time of issuance of the purchase order."

■ Both at common law (pre-code) and under the Oregon Uniform Commercial Code, a requirements contract is simply an agreement by the buyer to buy his good faith requirements of goods exclusively from the seller. If in good faith the buyer has no requirements, then he is not obligated to buy anything. *See* 1A Corbin on Contracts 30-33, § 156 (1963).

ORS 72.3060(1) provides:

> "(1) A term which measures the quantity by the output of the seller or the requirements of the buyer

means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded."

In reference to ORS 72.3060(1), Oregon's Uniform Commercial Code With Comments and Index and Tables, published in 1962 by the Legislative Counsel Committee, states:

"1. Subsection (1) of ORS 72.3060, in regard to output and requirements, applies to this specific problem the general approach of the Uniform Commercial Code which requires the reading of commercial background and intent into the language of any agreement and demands good faith in the performance of that agreement. * * *.

"2. * * * Reasonable elasticity in the requirements is expressly envisaged by ORS 72.3060 and good faith variations from prior requirements are permitted even when the variation may be such as to result in discontinuance. A shutdown by a requirements buyer for lack of orders might be permissible when a shutdown merely to curtail losses would not. The essential test is whether the party is acting in good faith. * * *."

To the same effect, *see* 1 Uniform Laws Annotated, Uniform Commercial Code 278, § 2-306, Comment 2 (1976).

White and Summers, Uniform Commercial Code 108-09, Sec. 3-8 (1972) states:

"Both pre-Code cases and 2-306(1) [ORS 72.3060(1)] allow 'good faith' reductions and even abandonment. Thus, it is not bad faith for a buyer to reduce his orders where his own business needs have actually fallen off. * * * Nor is it bad faith to cut orders because of new government regulations or a strike, or some other event beyond the buyer's control, provided that the buyer did not assume the risk of its occurrence. * * * Thus a seller claiming breach would have to show that the buyer

decreased his orders in bad faith.[1] * * * Even drastic good faith reductions are not unreasonably disproportionate." (Footnotes omitted.)

■ Under the stipulated facts of this case, once the hospital project was terminated by the State of Oregon defendant had no good faith need for plaintiff's concrete and defendant was not obligated to buy any further concrete from plaintiff pursuant to the requirements contract.[2]

Other issues are discussed in the plaintiff's brief but we conclude that the above discussion is decisive of the assignments of error in this case.

We conclude that the trial court did not err as a matter of law or fact in granting summary judgment for the defendant.

Affirmed.

---

[1] "* * * Since the contract made no provision for a minimum requirement by defendant, its notice to plaintiff that it had no requirement did not of itself constitute a breach of the agreement. It follows that since plaintiff claimed a breach it was its duty to prove it, and the burden, therefore, rested upon it to show that defendant had acted in bad faith. * * *" *HML Corporation v. General Foods Corporation,* 365 F2d 77, 83 (3rd Cir 1966).

[2] There is no indication in the record that defendant was in any way responsible for the cancellation of the project. *See* stipulated fact No. 3.