John B. STACKS *v.* F & S PETROLEUM COMPANY, INC.

CA 82-68                                    641 S.W.2d 726

Court of Appeals of Arkansas
Opinion delivered November 10, 1982
[Rehearing denied December 8, 1982.*]

*COOPER, J., would grant rehearing.

*Dan Stripling,* for appellant.

*Pollard & Cavaneau,* by: *Jerry Cavaneau,* for appellee.

TOM GLAZE, Judge. This case involves a requirements agreement. Under the agreement, appellee supplied gasoline to appellant's outlet store located in Bee Branch, Arkansas. Later, appellee filed suit against appellant for $37,527.80, the outstanding balance owed on the gas supplied the outlet. Appellant denied liability and contended that Thomas Davis, who leased the outlet, was solely liable for the past-due monies. The jury returned a verdict against appellant. In this appeal appellant argues, among other things, that the verdict is not supported by substantial evidence.

This legal controversy largely centers on the following March 9, 1977, agreement:

March 9, 1977

Mr. John B. Stacks
Route 1
Damascus, Arkansas

Dear Mr. Stacks:

With further reference to our conversations in regard to our supplying you with motor gasoline at your gasoline outlet which is now under construction in Bee Branch, I have listed below the agreed points which we discussed Sunday, February 20, 1977:

1. We agree to furnish you fuel in an amount up to

50,000 gallons per month. We will withhold this amount from our various allotments. The amounts will be subject to allocation adjustment by the Federal Energy Administration.

2. We will be your exclusive supplier upon the following terms:

    a. Costs will be laid-in costs per gallon plus $.01 per gallon.

    b. Gallons will be temperature corrected.

    c. Billing terms will be net 4 days from invoice.

3. If the Federal Energy Administration allocation falls below 96%, terms in "a" will be negotiated and revised upward.

The above is, in substance, the terms upon which we agreed in our meeting. Please sign below after our signature and return the original to me.

    F & S Petroleum Company, Inc.

    /s/ Dee Francy, President

    /s/ John B. Stacks

In brief, appellant contends the foregoing agreement is indefinite and fails to obligate him for gasoline subsequently supplied to his outlet. After the agreement was executed, appellant leased the outlet to Davis. Except for two initial loads of gasoline ordered by appellant, all other loads were delivered to the outlet at the direction of Davis. Appellant contends that he is not obligated for that gas furnished the outlet while Davis was lessee because: (1) the agreement was merely a commitment by appellee to supply gasoline to appellant's outlet; (2) the agreement did not require him to purchase gas — even a minimum order — nor did it specify how long the agreement would last; (3) the terms in the agreement did not purport to obligate appellee

to supply gas to a subsequent owner or lessee of the outlet, nor did it make appellant liable to guarantee the debt of Davis.

This transaction is controlled by Ark. Stat. Ann. § 85-2-306 (1) (Add. 1961), which provides:

> 85-2-306. Output, requirements and exclusive dealings. — (1) A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable output or requirements may be tendered or demanded.

Both at common law and under the Uniform Commercial Code, a requirements contract is simply an agreement by the buyer to buy his good faith requirements of goods exclusively from the seller. *See Wilsonville Concrete Products* v. *Todd Building Co.,* 281 Or. 345, 574 P.2d 1112 (1978). Comment 2 to § 85-2-306 (1) explicitly rejects the notion that requirements contracts are too indefinite to enforce because such contracts are held to mean the actual good faith requirements of the particular party. Therefore, Professors White and Summers conclude that a party who seeks to invalidate a requirements contract bears a heavy burden. *See* White and Summers, *Uniform Commercial Code,* § 3-8 (2d ed. 1980). Comment 2 further provides that a requirements contract does not lack mutuality of obligation since the party who will determine quantity is required to operate his plant or conduct his business in good faith and according to commercial standards of fair dealing in the trade so that his requirements will approximate a reasonably foreseeable figure.

In view of the foregoing rules and guidelines, the fact that the parties' March 9 agreement left open the number of gallons to be purchased monthly does not support invalidation of the agreement. The Code imposed on the appellant, as a buyer, the responsibility to conduct his business in good

faith and in accordance with commercial standards of fair dealing in the trade so that his requirements would approximate a reasonably foreseeable figure, in this instance, 50,000 gallons per month. Appellee agreed to furnish this amount on the terms specifically contained in the March 9 agreement. Additionally, appellant agreed to purchase gasoline exclusively from appellee. The parties' agreement undoubtedly qualifies as a requirements contract and is enforceable as such. Although the agreement failed to provide for when it would terminate, Ark. Stat. Ann. § 85-2-309 (2) states that if a contract provides for successive performances but is indefinite in duration, it is valid for a reasonable time.

In holding that appellant was directly liable for the gasoline delivered to his outlet under the March 9 agreement, it is unnecessary to consider his argument that he could be responsible for the purchases only if Davis were appellant's agent. However, we do consider one other issue raised by appellant, concerning one of the court's instructions. Appellee sued appellant on two theories: (1) that appellant was directly liable to appellee under the parties' March 9 agreement, or in the alternative (2) that appellant was obligated as a guarantor under the March 9 agreement which was a contract of guaranty that covered gasoline purchases made by Davis. Appellant countered, claiming the March 9 agreement was not an enforceable contract, but even if it were, that he was discharged by a novation, *i.e.,* that all the parties agreed for Davis to take on the contractual obligations for the gasoline in place of appellant. The court instructed the jury on each of the foregoing contentions of appellant and appellee and additionally gave the following instruction over appellant's objection:

## INSTRUCTION NO. 8

You are further instructed that when contract rights and duties are assumed by a new party, the person originally obligated remains liable as a surety unless he is discharged by novation.

Appellant argues that the language in this instruction was confusing because it erroneously implied there was

evidence of an assignment and that it misused the term surety for that of guaranty. We agree that the language in the instruction could have been more exacting. However, we fail to see how appellant was prejudiced. Obviously, the jury found no novation or it would not have found appellant liable for the gasoline. Furthermore, we have found that appellant was directly liable for the gasoline under the parties' agreement and the evidence amply supports that conclusion as well as the verdict rendered by the jury. The parties' March 9 agreement was neither a guaranty nor a surety. Although the instruction may have proved to be unnecessary, the appellant was not prejudiced by its having been given.

Since we find no error, we affirm.

Affirmed.

MAYFIELD, C.J., concurs.

COOPER, J., dissents.