UNITED SERVICES AUTO ASSOCIATION, Appellant/ Cross-Respondent, v. LAWRENCE SCHLANG, Respondent/Cross-Appellant.

No. 23617

April 27, 1995                                    894 P.2d 967

[Rehearing denied October 19, 1995]

*Vargas & Bartlett* and *Scott A. Glogovac,* Reno, for Appellant/ Cross-Respondent.

*Hampton M. Young, Jr.,* Reno, for Respondent/Cross-Appellant.

## OPINION

By the Court, STEFFEN, C. J.:

This appeal addresses an issue of first impression in this jurisdiction concerning the meaning and effect of a medical payments (med-pay) clause in an insurance policy that limits payment to expenses incurred within three years from the date of the covered accident. Respondent/cross-appellant Lawrence Schlang contends that he satisfied the conditions of the clause by entering into a requirements contract prior to the expiration of the three-year policy period. He therefore claims that he is entitled to lifetime payments up to the limits of the med-pay coverage. Appellant/cross-respondent United Services Auto Association (USAA) denies the existence of a requirements contract and otherwise contends that Schlang's claim for additional coverage lacks merit. We agree and reverse.

### FACTS

On January 19, 1987, Schlang sustained serious injuries as a result of a collision with an underinsured driver. At the time of the accident, Schlang's vehicle was insured by USAA.[1] After various treatments and surgery, it was determined that Schlang would suffer from a lifetime of sleep apnea, a condition causing intermittent cessation of breathing during sleep. Schlang's condition required the permanent use of a night-time breathing apparatus, or "constant positive air pressure machine" ("CPAP"). USAA paid all medical expenses relating to Schlang's injuries during the three-year period following the accident, as provided in the policy.

As the policy's three-year time limit approached, Schlang's attorney informed USAA of the need for future surgery, and the lifetime availability of CPAP. The attorney also sent USAA a

---

[1]The focus of this appeal is the limitation period included in Schlang's policy with USAA, which provides, in pertinent part:

PART B—MEDICAL PAYMENTS COVERAGE
We will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury:
1.  Caused by accident; and
2.  Sustained by a covered person.
*We will pay only those expenses incurred within 3 years from the date of the accident.*

(Emphasis added.)

copy of what was termed a contract between Advanced Medical Services ("AMS"), a medical supplier, and Schlang for CPAP supplies. In response, USAA requested documentation from Schlang's doctors verifying the necessity for the CPAP in order to "seriously consider" the claim. Schlang's attorney wrote back, suggesting that all of the specified documentation had been previously supplied. In any event, after January 19, 1990, USAA discontinued further payments on Schlang's claims.

The following month Schlang filed this action against USAA claiming that he had "incurred" his CPAP expenses within the policy limitation period and alleging causes of action for breach of contract, bad faith and declaratory relief. Thereafter, both parties filed motions for summary judgment. The district court granted summary judgment in favor of USAA, disposing of all issues except the claim that Schlang was entitled to CPAP for thirty years.

After a bench trial, the district court ruled that a valid and binding requirements contract had been entered into between Schlang and AMS and that the CPAP expenses had therefore been "incurred" within the policy's three-year term. The court's decision obligated USAA to pay Schlang's future expenses related to the CPAP up to a maximum of $62,396.89 (the remaining balance of Schlang's $100,000.00 policy limit for med-pay coverage). Subsequently, Schlang successfully sought costs and attorney's fees based upon USAA's failure to accept his offer of judgment prior to trial.

On appeal, USAA challenges the district court's judgment awarding Schlang his medical expenses for thirty years of CPAP supplies and his costs and attorney's fees, and denying USAA's motion to alter or amend judgment. Schlang cross appeals from the district court's summary dismissal of his claim for punitive damages and bad faith.

## DISCUSSION

Because USAA was required under the terms of its policy with Schlang to pay only those expenses "incurred" within three years of the accident, the threshold issue before us is whether Schlang's claimed expenses were timely incurred. A majority of courts considering the issue have concluded that expenses are "incurred" when one has paid or become legally obligated to pay them. For example, in Virginia Farm Bureau Mut. Ins. Co. v. Hodges, 385 S.E.2d 612 (Va. 1989), an insured sued her insurer for plastic surgery that was to be performed after the period permitted by her policy. Two days prior to the one-year limitation, her physician drafted a memo in which he agreed to perform surgery for a specified cost. The insured did not accept the offer

within the policy limitation period. Accordingly, the court indicated:

> An expense can only be "incurred" . . . when one has paid it or become legally obligated to pay it. Moreover, "incur" is defined in Webster's Third New International Dictionary 1146 (1986) as follows: "become liable or subject to . . . ."
>
> During the first year after her accident, [the insured] did not pay [the doctor] nor was she contractually obligated to pay him. She could have decided to go to another doctor or not have the surgery at all. Therefore, *she did not "incur"* the expense of [the] suggested surgical procedure within the meaning of the policy.

*Id.* at 614 (footnote omitted); *accord* Reliance Mut. Life Ins. Co. v. Booher, 166 So. 2d 222, 224 (Fla. Dist. Ct. App. 1964) (insured must have paid or become liable for the payment within the limitation period); Atkins v. The Great Am. Ins. Co., 189 S.E.2d 501, 504 (N.C. Ct. App. 1972) (expenses incurred when "one has paid, or become legally obligated to pay" within the policy's time provision); Lefebvre v. Government Employees Ins. Co., 259 A.2d 133, 135 (N.H. 1969) (expenses incurred when one becomes obligated to pay); Riverside Ins. Co. of Am. v. Cargill, 570 S.W.2d 455, 456 (Tex. Ct. App. 1978) (the prevailing view is that medical expenses are incurred when "expenses are charged, paid, obligated to be paid, prepaid or the services are rendered or performed" within the policy's time provision).

Mindful of the foregoing authorities, our task is to determine whether the district court erred in ruling that Schlang timely incurred a contractual obligation with AMS to purchase his CPAP requirements from AMS over a period of thirty years. In support of the proposition that he is bound by the obligations of a valid contract, Schlang relies on a May 1, 1989, letter from AMS, "accepted and approved" by Schlang in writing on January 11, 1990. In the letter, AMS agreed to provide "CPAP units and supplies, as needed, for the remainder of [Schlang's] lifetime" at an estimated price, and contingent upon certain conditions.[2] However, USAA contends that the alleged agreement between AMS and Schlang does not satisfy the prerequisites for a requirements contract as a matter of law. We agree.

A requirements contract exists where one party promises to

---

[2]The contested writing, on AMS letterhead, and signed by Douglas B. Bennett, President of AMS, provides as follows:

> We agree to provide Mr. Larry Schlang with CPAP units and supplies, as needed, for the remainder of his lifetime, as long as the provisions

supply the needs of the other party during a certain period of time at an agreed price, and the other party expressly or implicitly promises that he will obtain his goods or services exclusively from the first party. *See* Bank of America Nat'l Trust & Sav. Ass'n v. Smith, 336 F.2d 528, 528-29 n.1 (9th Cir. 1964).

The court in Harvey v. Fearless Farris Wholesale, Inc., 589 F.2d 451 (9th Cir. 1979), interpreted an alleged requirements contract. The facts indicated that the defendant was obligated to sell to plaintiffs while plaintiffs were at liberty to purchase from any supplier. The *Harvey* court concluded that the contract failed under relevant Idaho law:

> Mutuality of obligation as pertains to an executory contract requires that each party to the agreement be bound to perform; if it appears that one party was never bound on his part to do the acts which form the consideration for the promise of the other, there is a lack of mutuality of obligation, and the other party is not bound.

*Id.* at 460 n.12 (quoting McCandless v. Schick, 380 P.2d 893, 898 (Idaho 1963)). Similarly, this court has stated that "[m]utuality of obligation requires that unless both parties to a contract are bound, neither is bound." Sala & Ruthe Realty, Inc. v. Campbell, 89 Nev. 483, 487, 515 P.2d 394, 396 (1973). Other courts have

---

listed below are met. We have estimated the costs of providing such services and have outlined them below.

This agreement and estimated costs are conditional upon the following. We agree to uphold this contract provided that:

(a) Advanced Medical Services remains under the current ownership.

(b) Advanced Medical Services continues to provide CPAP units and related services to our patients.

(c) Mr. Schlang maintains and properly handles the equipment which we provide him.

(d) Mr. Schlang agrees to pay for any damage to our equipment not caused by normal use of the equipment.

We estimate a total cost of providing CPAP units and supplies to Mr. Schlang, over a period of 30 years, to be approximately $30,000. This figure is based on an estimated replacement period of every three years. The following factors could greatly alter this estimate; therefore, we cannot provide a guaranteed cost to Mr. Schlang. The above estimate does not include any inflation factors.

The variable factors that could alter the estimated costs include:

(a) How often Mr. Schlang uses the equipment.

(b) How much care is taken in handling the equipment.

(c) The cost of medical equipment in the future.

(d) The cost of servicing the equipment in the future.

(e) Changes in Mr. Schlang's health condition.

Mr. Schlang will be billed for the equipment and services that we provide on a monthly basis or at the time the service is rendered.

reached similar results. *See* Embedded Moments, Inc. v. International Silver Co., 648 F. Supp. 187, 192 (E.D.N.Y. 1986) (contract unenforceable where one party is bound to sell but other party is only entitled, not bound, to buy, or to buy exclusively); Baber v. Lay, 305 S.W.2d 912, 914 (Ky. 1957) (mutuality of obligation is essential element of an executory contract); and Streich v. General Motors Corp., 126 N.E.2d 389, 394 (Ill. App. Ct. 1955) (mutuality lacking where buyer is not obligated to purchase from seller).

Schlang contends that a requirements contract "is simply an agreement by the buyer to purchase his good-faith requirements of goods exclusively from the seller." Stacks v. F&S Petroleum Co. Inc, 641 S.W.2d 726, 727 (Ark. Ct. App. 1982); Wilsonville Concrete Products v. Todd Bldg. Co., 574 P.2d 1112, 1114-15 (Or. 1978). Of course, at no place in the letter "agreement" relied upon by Schlang does he agree, exclusively or otherwise, to purchase CPAP supplies from AMS.

It is true that NRS 104.2306(1) speaks in terms of "good faith" and reasonableness rather than requiring specified quantities in determining whether a valid requirements contract exists. It is also true that Official Comment 1 to UCC Section 2-306(1), the counterpart to NRS 104.2306(1), explains the section as follows:

> 1. Subsection (1) of this section, in regard to output and requirements, applies to this specific problem the general approach of this Act which requires the reading of commercial background and intent into the language of any agreement and demands good faith in the performance of that agreement. . . .

Schlang suggests, based upon this statute and its UCC commentary, that a requirements contract may exist when a seller has agreed to supply to a purchaser all of the purchaser's needs without the purchaser promising to buy exclusively from that seller. Rather, the purchaser must merely perform in good faith.

Schlang cites Hoover's Hatchery, Inc. v. Utgaard, 447 N.W.2d 684 (Iowa Ct. App. 1989), as support for his position. The *Hoover* court stated:

> A term which measures quantity by the requirements of the buyer may be used in lieu of a specification of a certain quantity. The statute impresses a "good-faith" limitation upon the elasticity inherent in such a contract. Furthermore, the statute recognizes that such contracts may include stated estimates as to a buyer's requirements.
> . . . .
> Even if exclusivity were to be regarded as an element of a

requirements contract, this requirement can be satisfied if the buyer contracts to purchase up to a specified amount exclusively from the seller. . . . "The requirement of exclusivity does not mean that the buyer must contract to purchase all of his requirements from a particular seller." (Citation omitted.)

    . . . [T]his court finds that the inclusion of defendant's expected requirements set forth in the correspondence which constitutes the agreement, is a sufficient standard by which the good faith of the parties may be measured.

*Id.* at 688.

Schlang maintains that his need for a long-term supply of CPAP supplies together with AMS' desire to accommodate this need meets the good faith requirements of the statute. In addition, Schlang contends, citing Cyril Bath Co. v. Winters Indus., 892 F.2d 465, 467 (6th Cir. 1989), and Brem-Rock, Inc. v. Warnack, 624 P.2d 220, 224 (Wash. Ct. App. 1981), that a commitment to purchase exclusively from one supplier may be implied.

Moreover, Schlang contends that he and AMS negotiated the terms of the "requirements contract" so that he would enjoy the benefits of a sure supplier for thirty years. In addition, Schlang notes that he had a machine repaired and purchased a replacement mask pursuant to the contract, thus demonstrating a course of conduct illustrative of a good-faith effort to abide by the terms of the contract.

We agree that a buyer's promise to purchase from the seller may be satisfied either expressly or implicitly. Stated another way, "[i]n construing a contract in which only the seller has agreed to sell, a court may find an *implied* reciprocal promise on the part of the buyer to purchase exclusively from the seller, at least when it is apparent that a binding contract was intended." Propane Indus., Inc. v. General Motors Corp., 429 F. Supp. 214, 219 (W.D. Mo. 1977) (emphasis in original).

Furthermore, a contract for the sale of goods which is evidenced by a writing which the parties intend to be a final expression of the agreement "may be explained or supplemented . . . [b]y course of dealing or usage of trade . . . or by course of performance[.]" NRS 104.2202(1). Also, where a contract is ambiguous, "parol evidence is admissible to explain its meaning." Meuse-Rhine-Ijssel Cattle Breeders v. Y-Tex Corp., 590 P.2d 1306, 1311 (Wyo. 1979).

Despite the general validity of these legal principles, there is

no sufficient factual basis for relying thereon to conclude that the letter at issue herein constitutes a valid requirements contract. Even if there were a sufficient basis to imply an obligation on the part of Schlang, the letter is clearly written to expressly refute any such obligation on the part of AMS.

The district court, indicating that Schlang had done all he could to enter into an enforceable contract, determined that the AMS agreement was a valid and binding contract incurred within the three-year benefit period. However, the question of Schlang's diligence in doing "all that he could do" is not relevant. The real issue is whether the alleged agreement satisfied the elements of a valid requirements contract.

The letter from AMS does not by its terms require or purport to require Schlang to purchase all or any of his requirements from AMS. Nor does it bind AMS to supply the equipment at a specified price. Instead, the letter indicates that the estimate is only good for as long as AMS remained under its current ownership and continued in the business of supplying CPAP units. Indeed, the letter explained that the cost estimate could be "greatly alter[ed]" by such things as inflation, the cost of medical equipment and servicing such equipment in the future, and several other named factors. In other words, the letter was no more than an invitation for orders from Schlang, to be tentatively filled at an estimated price, *until the price increased by reason of the enumerated factors.*

We do not dismiss the validity of Schlang's assertions that in determining whether a requirements contract exists, courts may look to principles of good faith, reasonableness, and implication. However, even under such lenient standards, there must be some basis for a court's determination that a contract has been formed.

The letter in the instant case is not ambiguous in any of its points; indeed, the writer labored to specify with clarity that the letter did not constitute an assurance of future performance. Nothing in the letter purports to create a clear expectancy that AMS will be bound for any set period to supply equipment and services either at all or for fixed prices that Schlang could rely upon. More importantly, as stated previously, Schlang is not remotely obligated to purchase either equipment or services from AMS under the terms of the letter. This latter point, of critical importance, is impliedly recognized in the last paragraph of the letter which simply states, "Mr. Schlang will be billed for the equipment and services *that we provide* on a monthly basis or at the time the service is rendered." (Emphasis added.) There is no provision in the letter that even addresses the obligation of Schlang to purchase anything from AMS. The letter merely specifies what Mr. Schlang could likely expect, by way of esti-

mates and conditions, if he should elect to purchase CPAP equipment and services from AMS.

In view of the foregoing, there is no basis for the implication of a reciprocal promise by either party. We must therefore conclude that no valid requirements contract existed to create an enforceable obligation on the part of Schlang or AMS.

Schlang next cites Valladares v. Monarch Ins. Co., 282 So. 2d 569 (La. Ct. App.), *application for cert. or writ of review denied,* 284 So.2d 603-604 (1973), for the proposition that, even in the absence of a valid requirements contract, his expenses were nevertheless "incurred" within the policy time limitations. The *Valladares* court adopted the following four-step analysis for determining whether a medical expense is incurred within a limitation period: "[1] the injury manifests itself within [the policy's limitation period], [2] the insurer is aware of the nature of the injury, [3] the insured approaches a physician and obtains a diagnosis and recommended course of treatment prior to the expiration [of the limitation period], and [4] the treatment cannot successfully be completed within the [limitation] period[.]" *Id.* at 572.

Schlang also relies on Whittle v. Government Employees Ins. Co., 273 N.Y.S.2d 442 (N.Y. App. Div. 1966). The *Whittle* court, faced with a similar policy limitation period, indicated, "[i]n our opinion, the word 'incurred,' as employed therein, must be deemed to include any liability undertaken within a year of the accident for reasonable medical services necessitated as a result of the accident, irrespective of the time within which such services are completed." *Id.* at 443. Additionally, in Atchley v. Travelers Ins. Co., 489 S.W.2d 836, 837 (Tenn. 1972), the court stated, "if the necessity for the medical services and expenses is manifested within the fixed time period, then they are incurred and the insurer is liable for their payment. This is true even though the services were not paid for within the fixed time." *Id.* at 837 (citations omitted).

Schlang contends that the reasoning of the preceding cases indicate that since his lifetime medical need for the CPAP was unequivocally established, his expenses were timely incurred within the provisions of the policy. Schlang's premise is sound if this court were to follow the reasoning of the cases cited in support of his position.

However, various commentators have addressed the issue of when expenses are incurred for purposes of insurance policy limitation periods and a review of these authorities reveals that the cases cited by Schlang are understandably representative of a minority position. One respected commentator has indicated:

> Where the contract of insurance provides for the payment of medical expenses "incurred" within a specified time period, it is by definition not necessary that payment be made in the specified time, but there is coverage when the liability to pay becomes fixed by contract within the specified time period.

13A George J. Couch, *Couch on Insurance 2d* § 48:72 (Rev. ed. 1982). Another noted commentator similarly indicates:

> It has been stated the phrase means the insurer becomes obligated when its insured becomes obligated, that is at the date of the contracting for payment of services to remedy all injuries caused by the accident. Expenses were "incurred," within meaning of an automobile policy provision extending coverage for reasonable expenses incurred within one year from date of accident, when one had paid, or had become legally obligated to pay, such expenses within one year from the date of the accident. Although a policy limited claims for medical expense to those incurred within one year of the accident, the insurer was held liable for services rendered after the lapse of a year, where paid for within that time.

8A John A. Appleman and Jean Appleman, *Insurance Law and Practice* § 4902.40 (Rev. ed. 1981) (footnotes omitted).

A minority of jurisdictions have adopted an approach similar to Louisiana's four-step approach, or the *Whittle* and *Atchley* decisions. However, as the *Virginia Farm Bureau* court stated: "[a] number of courts have dealt with this issue. Most of them have held that the expense must have been paid or contracted for within the limitation period of the policy at issue." *Virginia Farm Bureau,* 385 S.E.2d at 614 n.2. Schlang did not pay the $30,000.00 to AMS within the three-year policy limitation period. Nor did he enter into an enforceable contract with AMS obligating him to use or pay AMS for the necessary services. Thus, Schlang did not "incur" an expense within the policy limitation period under the majority rule.

We conclude that the majority position, as illustrated by *Virginia Farm Bureau* and similar cases, *see supra,* is the better reasoned approach, and elect to adopt the reasoning of those cases. In our view, a contrary position would do violence to the language of the insurance contract and would be inconsistent with sound principles of contract law. Although we understand the hardship our ruling may impose upon Schlang, that fact does not give us license to rewrite the contract of insurance to provide coverage where it does not exist.

## CONCLUSION

For the reasons discussed above, we conclude that Schlang's

contested expenses were not incurred within the limitation period of his policy. Our ruling necessitates reversing the award of costs and attorney's fees to Schlang and renders unnecessary discussion of the other issues raised by USAA's appeal and Schlang's cross appeal.

The decision of the district court is reversed and this matter is remanded for entry of judgment in favor of USAA in accordance with the terms of this opinion.

YOUNG and SHEARING, JJ., concur.

ROSE, J., with whom SPRINGER, J., joins, dissenting:

Many insurance policies limit benefits to those expenses incurred during a specific period of time, in this case three years. This is generally an appropriate limitation unless a permanent injury or condition is diagnosed during the compensable period. When a permanent injury or condition is covered by an insurance policy and diagnosed within the time period, the approach taken by the Louisiana court in Valladares v. Monarch Ins. Co., 282 So. 2d 569 (La. Ct. App. 1973), seems to be the most realistic. That case recognizes that an expense is incurred if a physician directs a course of treatment during the limitation period even though the treatment cannot be successfully completed during that time. While not the majority rule in the United States, this analysis has been adopted by other courts. Whittle v. Government Employees Ins. Co., 273 N.Y.S.2d 442 (N.Y. App. Term. 1966); Atchley v. Travelers Ins. Co., 489 S.W.2d 836 (Tenn. 1972).

My preference would be to adopt this approach in Nevada when determining whether a compensable injury is incurred within a time period set in an insurance policy. I would affirm the award to Mr. Schlang and recognize his need for prolonged assistance with his sleep apnea condition that was caused by the accident and diagnosed within the limitation period.