# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-00303-SCT

## CONSOLIDATED WITH

## NO. 2003-CA-02457-SCT

*BETHANY WOOTEN, A MINOR, BY AND
THROUGH HER PARENTS, NEXT FRIENDS,
AND GUARDIANS, BETTY WOOTEN AND
CHARLES WOOTEN*

*v.*

*MISSISSIPPI FARM BUREAU INSURANCE
COMPANY*

## ON MOTION FOR REHEARING

DATE OF JUDGMENT:               12/1/2004
TRIAL JUDGE:                    HON. SEBE DALE, JR.
COURT FROM WHICH APPEALED:      MARION COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         AUSTIN R. NIMOCKS
ATTORNEY FOR APPELLEE:          PATRICK H. ZACHARY
NATURE OF THE CASE:             CIVIL - INSURANCE
DISPOSITION:                    AFFIRMED - 03/02/2006
MOTION FOR REHEARING FILED:     11/14/2005
MANDATE ISSUED:


**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied. The original opinion is withdrawn and this

opinion is substituted therefor.

¶2.     On March 31, 2002, Bethany Wooten ("Wooten") was injured during a two- car accident. At the time of the accident, Wooten was a permissive driver of the vehicle owned by her parents and insured under a policy issued by Mississippi Farm Bureau Insurance Company ("Farm Bureau"). Wooten was covered under the policy, which provided for $15,000 in medical payments coverage. Farm Bureau advised Wooten that it would not pay the bills for medical treatment which was not completed on or before March 31, 2003. This decision was based on language within the policy which stated that payment would be made on medical expenses incurred within one year from the date of accident.

¶3.     On March 31, 2003, Wooten filed her Complaint for Declaratory Judgment, seeking a declaration from the Chancery Court of Marion County that the disputed provision of the medical payments policy be interpreted in a manner contrary to Farm Bureau's reading of the policy. Farm Bureau filed its answer and moved for summary judgment.

¶4.     No oral argument or hearing was held, and on October 13, 2003, the chancellor handed down his opinion which stated that the insurance policy phrase at issue was clear and unambiguous. Thus, the chancellor granted summary judgment to Farm Bureau. The chancellor denied Wooten's request for reconsideration, and Wooten appealed.

¶5.     On appeal, Wooten asserts: (1) the chancellor erred in determining that the phrase at issue is clear and unambiguous and failed to consider the absence of the word "furnished" from the phrase in making this determination; and (2) the chancellor erred in failing to

acknowledge or consider the Mississippi public policy considerations at issue in this matter as provided by this Court in prior decisions.

## ANALYSIS

¶6.     We  apply a de novo standard of review when reviewing a trial court's grant or denial of summary judgment. *Hudson v. Courtesy Motors, Inc.,* 794 So.2d 999, 1002 (Miss. 2001).

**I.      Whether the chancellor erred in determining the phrase at issue was clear and unambiguous.**

¶7.     Wooten maintains the chancery court erred in determining the phrase in Farm Bureau's auto insurance policy was clear and unambiguous. Wooten also argues  the chancery court failed to consider the absence of the word "furnished" from the phrase in making this determination.  Farm Bureau counters these arguments by stating that the phrase at issue in the policy is clear and unambiguous and that this conclusion is supported by previous rulings of this Court and common sense of the English language.

¶8.     The medical payments provision at issue states:

### II. MEDICAL PAYMENTS – Coverage C

> To pay all reasonable expenses *incurred within one year from the date of accident* for necessary medical, surgical, and dental services, including prosthetic devices, and necessary ambulance, hospital, professional, and funeral services….

We have previously held that an insurance agreement should be enforced as written, unless it is ambiguous. *Miss. Farm Bureau Mut. Ins. Co. v. Jones,* 754 So.2d 1203,1204 (Miss. 2000).  Wooten argues  the disputed phrase is ambiguous because it is subject to more than

3

one interpretation since there are two differing views on the matter. Specifically, Wooten relies on a case decided by the Supreme Court of Nevada, ***United Services Auto Ass'n v. Schlang***, 894 P.2d 967 (Nev. 1995). There, the Nevada Supreme Court stated that a majority of the courts considering the issue have concluded that expenses are "incurred" when one has paid or become legally obligated to pay them. ***Id.*** at 969. However, the Nevada Supreme Court also noted a "minority position" which generally accepts the phrase at issue "must be deemed to include any liability undertaken within a year of the accident for reasonable medical services necessitated as a result of the accident, irrespective of the time within which such services are completed." ***Id.*** at 972 (quoting ***Whittle v. Gov't Employees Ins. Co.,*** 273 N.Y.S.2d 442, 443 (N.Y. App. Term 1966)). Wooten also informs this Court that the "minority position" has been adopted by Tennessee[1], New York[2], and Louisiana.

¶9.     Farm Bureau contends the mere fact that different courts from different states have reached differing opinions on the question presently before this Court, does not (and should not) allow Wooten to "bootstrap" herself into the conclusion that the phrase at issue is ambiguous.

¶10.    Therefore, we must initially decide if the disputed phrase is truly ambiguous because of varying interpretations or if the chancellor was correct in giving the words used their plain and ordinary meaning. Wooten cites ***Schlang*** in order to persuade this Court to adopt the "minority position" when interpreting the term "incurred" in an insurance contract. While it

---

[1] ***Atchley v. Travelers Ins. Co.,*** 489 S.W.2d 836 (Tenn. 1972).
[2] ***Farr v. Travelers Indem. Co.,*** 375 N.Y.S.2d 229 (N.Y. Sup. Ct. 1975).

4

is true that the Nevada Supreme Court discussed the majority and minority positions in

*Schlang*, when reaching its disposition, the court stated:

> We conclude that the majority position as illustrated by *Virginia Farm Bureau*[3] and similar cases is the better reasoned approach, and elect to adopt the reasoning of those cases. In our view, a contrary position would do violence to the language of the insurance contract and would be inconsistent with sound principles of contract law. Although we understand the hardship our ruling may impose upon Schlang, that fact does not give us license to rewrite the contract of insurance to provide coverage where it does not exist…. For the reasons discussed above we conclude that Schlang's contested expenses were not incurred within the limitation period of his policy.

*Schlang*, 894 P.2d at 973.

The court in *Schlang* did not adopt the minority position, but reversed the decision of the

district court in favor of the insurance company. Wooten also cites the 4-pronged test

developed by the Louisiana Court of Appeals in *Valladares v. Monarch Ins. Co.,* 282 So.2d

569 (La. Ct. App. 1973). Specifically, the court stated that when:

> [T]he injury manifests itself within one year of the accident, the insurer is aware of the nature of the injury, the insured approaches a physician and obtains a diagnosis and recommended course of treatment prior to the expiration of one year from the date of the accident, and the treatment cannot successfully be completed within the one year period, that the insured has nevertheless 'incurred' an expense within the terms of the policy.

---

[3] *Va. Farm Bureau Mut. Ins. Co. v. Hodges*, 385 S.E.2d 612 (Va. 1989).

*Valladares*, 282 So.2d at 572.  Wooten then asserts that the *Valladares* test has been validated by this Court in *Interstate Life & Accident Co. v. Waters,* 213 Miss. 265, 56 So.2d 493 (1952).  In *Waters*, the Court stated:

> According to the doctor's testimony in the case that we have before us, the loss of appellee's leg followed as the immediate result of the accident. The actual amputation was delayed, not because the appellee or the doctor entertained any hope that the leg might be saved, but because of the weakened condition of the appellee who was suffering from the severe infection and fever directly resulting from the accident and who would probably not have been able to survive the  shock incident to a major operation. The operation was delayed not because of any hope that the leg might be saved, but for the purposes of avoiding the risk of killing the patient. Accident policies, like all other insurance policies, must be given a reasonable and sensible interpretation. The loss of the member occurred  within thirty days from the date of the accident. The fact that the actual amputation has to be delayed for more than thirty days to avoid killing the patient whose extreme condition was due to the injuries received in the accident did not relieve the appellant from liability on the policy.

*Waters,* 56 So.2d at 273. *Waters* is distinguished from the present case because in *Waters*, the amputation needed by the injured party was delayed not by choice of the injured party or because the injured party had other treatment options, but to avoid killing him. Wooten had the initial choice of surgery, but declined this option and chose to receive pain management care.  Unlike the injured party in *Waters*, Wooten's life was not immediately in jeopardy. Therefore, Wooten is incorrect in asserting that a construction using the test in *Valladares* is consistent with Mississippi law as interpreted by this Court in *Waters.* This Court in

6

*Waters* found that the injured party was dealing with a life or death situation and that the insurance company should not be allowed to sever coverage prior to the amputation of the injured party's leg. Wooten's situation is not as immediate or drastic because she had a choice of treatment after reviewing her options. Subsequently, Wooten has not presented a strong, persuasive argument that this Court has previously embraced the minority interpretation of the disputed phrase.

¶11.    However, this Court has followed the plain meaning and common sense approach when interpreting insurance clauses. *Noxubee County School Dist. v. United Nat. Ins. Co.,* 883 So.2d 1159 (Miss. 2004); *Blackledge v. Omega Ins. Co.,* 740 So.2d 295 (Miss. 1999); *Allstate Ins. Co. v. Chicago Ins. Co.,* 676 So.2d 271 (Miss. 1996). The chancery court relied on this Court's definition of the word "incurred" in *Reserve Life Co. v. Coke*:

> As used in the policy and suit the word "incurred" emphasizes the idea of liability and the definition of "incur" is to have liabilities (or a liability) thrust upon one by act or operation of law; a thing for which there exists no obligation to pay, either express or implied, cannot in law constitute an "incurred expense"; a debt or expense has been incurred only when liability attaches.

24 Miss. 936, 183 So.2d 490 (1966). Also, according to Webster's New Collegiate Dictionary 1337 (1980), the word "within" may function as an adverb, preposition, noun, or adjective. In the context in which it is used in the disputed phrase, "within" functions as a preposition - meaning not beyond the quantity, degree, or limitations. So, the plain, common sense meaning of the phrase *"incurred within one year from the date of accident"* may sensibly be interpreted to mean that the liability or duty of the insurance company to pay

7

medical expenses may not extend beyond the limitation of one year from the date of the accident.

¶12.    Wooten also argues that the chancellor failed to consider the absence of the words "and furnished" from the phrase under consideration.  In essence, Wooten asks to have this Court revise the disputed phrase in order to change the meaning as it is currently written.  However, Wooten is precluded from making this argument because initially in her Brief in Support of the Motion for Summary Judgment, Wooten stated that "other jurisdictions and courts have addressed this issue, but these cases should not be considered by this court because the policy language at issue in those cases is different from the policy language here.  Specifically, these cases involve policy language which require that the costs at issue be "incurred for services furnished", or other similar language involving the words "furnish" or "furnished".  Clearly the use of the term "furnish" places a different meaning on the subject phrase.  Thus, in addressing this issue this court should only employ those cases which  address which address identical policy language...."  Farm Bureau is correct when it suggests that Wooten should not be allowed to assert as error that which she requested  the chancery court ignore in her original motion and brief.

¶13.    Furthermore, this Court traditionally applies the ordinary and plain meaning of words and concludes that the disputed phrase must be construed as written.  Therefore, the chancellor did not err in his interpretation of the phrase.

8

**II.     Whether the chancellor erred in failing to acknowledge or consider Mississippi public policy considerations at issue in this matter.**

¶14.     After careful examination of Wooten's brief, we conclude that Wooten failed to provide any statutory provision or case law in support of a public policy argument.  Also, this Court has stated that a public policy or statutory directive is not present in the medical payments context. *Miss. Farm Bureau Cas. Ins. Co. v. Britt,* 826 So.2d 1261 (Miss. 2002). This Court reasoned:  "because there are no equivalent statutory provisions in Mississippi that affect medical payment coverage contained in automobile insurance policies, we hold such coverage as governed by the terms of each insurance policy in which it is afforded, including terms of limitation…." *Id.* at 1265 (quoting *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 279 (5th Cir. 1988)).  Absent any relevant statutory provisions or case law to support a public policy argument, this is an issue better suited for the Legislature to address rather than this Court.

## CONCLUSION

¶15.     We agree that the chancellor did not err in his interpretation of the medical payments provision and that Wooten failed to make a valid public policy argument before this Court. Therefore, we affirm the judgment of the chancery court.

¶16.     **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ AND EASLEY, JJ., NOT PARTICIPATING.**

9