**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 24 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In Re: LAKE AT LAS VEGAS JOINT VENTURE, LLC, <br><br> Debtor, <br><br> ——————————————— <br><br> LID ACQUISITION, LLC, <br><br> Appellant, <br><br> v. <br><br> LAKE AT LAS VEGAS JOINT VENTURE, LLC; TRANSCONTINENTAL CORPORATION; OFFICIAL COMMITTEE OF UNSECURED CREDITORS; LLV-1, LLC; CREDIT SUISSE, CAYMAN ISLANDS BRANCH, <br><br> Appellees. | No. 11-15403 <br><br> D.C. No. 2:10-cv-01037-JCM-RJJ <br><br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

———————————

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted September 12, 2012
Las Vegas, Nevada

Before: RAWLINSON, BYBEE, and IKUTA, Circuit Judges.


The Security Agreement between Lake at Las Vegas Joint Venture (LLVJV) and Wells Fargo granted the bank a security interest, not an absolute assignment, in payments "due or to become due under or in connection with" the T-12 Acquisition Agreement, because the agreement: (1) expressly contemplated that, once signed, it created a security interest, *see, e.g.*, "T-12 Security Agreement" at ¶ 2; (2) gave Wells Fargo the right to demand the amount of any deficiency between the proceeds from the sale of the collateral and the amount of the loans, *see id.* at ¶ 15(e); and (3) required Wells Fargo to pay any surplus received from the sale of the collateral to the debtors or at the debtors' direction, *see id. See Dewhirst v. Citibank (In re Contractors Equip. Supply Co.)*, 861 F.2d 241, 245 (9th Cir. 1988) (citing *In re Evergreen Valley Resort, Inc.*, 23 B.R. 659, 661–62 (Bankr. D. Me. 1982)) (identifying factors relevant to determining whether an agreement creates a security interest or an absolute assignment).  For these same reasons, the Security Agreement between LLV-1, LLC and Wells Fargo granted the bank a security interest, not an absolute assignment, in the T-16 Acquisition Agreement and

2

payments "due or to become due under or in connection with" that agreement. Nothing in the Notices and Irrevocable Directions to Pay, attached to both security agreements, changes this analysis.

Because the T-12 Security Agreement gave LID Acquisition (Wells Fargo's assignee) a security interest only in payments from the T-12 Acquisition Agreement, and LLVJV received no payments in connection with the T-12 Acquisition Agreement before its bankruptcy filing, the T-12 Security Agreement does not give LID Acquisition a security interest in any post-petition payments made in connection with the T-12 Acquisition Agreement. *See* 11 U.S.C. § 552(a). Even if LLVJV had received a payment in connection with the T-12 Acquisition Agreement before filing bankruptcy, the T-12 Security Agreement would not give LID Acquisition a security interest in any post-petition payments under the T-12 Acquisition Agreement because those post-petition payments are not "proceeds" of pre-petition payments. *See* 11 U.S.C. § 552(b)(1); *see also Philip Morris Capital Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.)*, 944 F.2d 500, 501 (9th Cir. 1991).

Article 9 of the Uniform Commercial Code applies to LID Acquisition's security interest in the T-16 Acquisition Agreement and payments thereunder because payments made by a governmental purchaser, here, the City of Henderson,

3

are not "transfer[s] by a . . . government unit." Nev. Rev. Stat. 104.9109(4)(n); *see also* Former UCC § 9-104, Official Comment 5 (explaining that the governmental exception to the UCC applies only to transactions involving governmental borrowers); *United Servs. Auto Ass'n v. Schlang*, 894 P.2d 967, 970–71 (Nev. 1995) (recognizing the "general validity of [such] legal principles," including those presented in the UCC Official Comments).

Applying Article 9 here, LID Acquisition lost priority for its security interest in payments under T-16 when Wells Fargo filed its March 2008 termination statement. *See* Nev. Rev. Stat. § 104.9322(1)(a). LID Acquisition's new theory, asserted for the first time in oral argument, that Wells Fargo was without authority to file such a termination, was not "argued specifically and distinctly in [its] opening brief," *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994), which stated that Wells Fargo "inadvertently terminated its financing statement in the T-16 Acquisition Agreement." This new argument is waived. *See id*.

**AFFIRMED**.